# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**SIDNEY CLAYTON PARISH**                          **PLAINTIFF**

**V.**                **NO. 4:20CV01066 JM-PSH**

**SOCIAL SECURITY ADMINISTRATION**              **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommended Disposition (Recommendation) has been sent to United States District Judge James M. Moody, Jr. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Moody can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

## I. Introduction:

Plaintiff, Sidney Clayton Parish, applied for disability benefits on June 24, 2016, alleging disability beginning on June 1, 2015. (Tr. at 10). The application was denied initially and upon reconsideration *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Mr. Parish's claim. (Tr. at 19). The Appeals Council denied his request for review. (Tr. at 1). The ALJ's decision now

stands as the final decision of the Commissioner, and Mr. Parish has requested judicial review. For the reasons stated below, the Court should affirm the decision of the Commissioner.

## II. The Commissioner's Decision:

The ALJ found that Mr. Parish, who was born on April 11, 1970 (Tr. at 17), had not engaged in substantial gainful activity since the alleged onset date of June 1, 2015.[1] (Tr. at 12). At Step Two of the sequential five-step analysis, the ALJ found that Mr. Parish had the following severe impairments: degenerative disc disease status-post lumbar fusion, degenerative joint disease, mild COPD, and unspecified arthralgia in multiple joints. *Id.*

After finding that Mr. Parish's impairments did not meet or equal a listed impairment (Tr. at 12), the ALJ determined that Mr. Parish had the residual functional capacity ("RFC") to perform work at the sedentary exertional level, except that he required a "sit/stand option that involves standing or walking intervals of 15 minutes and sitting in intervals of 15 minutes." (Tr. at 13).

The ALJ next found that Mr. Parish was unable to perform any of his past relevant work. (Tr. at 17). The ALJ relied on the testimony of a Vocational Expert ("VE") to find that, considering Mr. Parish's age, education, work experience, and

---

[1] The relevant time-period for determination of eligibility for benefits is June 1, 2015 through July 19, 2019. (Tr. at 18-19).

RFC, jobs existed in significant numbers in the national economy that he could perform. (Tr. at 17-19). Therefore, the ALJ found that Mr. Parish was not disabled. *Id*.

## III. Discussion:

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

The United States Supreme Court recently held that "whatever the meaning of 'substantial' is in other contexts, the threshold for such evidentiary sufficiency [in Social Security Disability cases] is not high. Substantial evidence…is more than a

mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing.

B.   Mr. Parish's Arguments on Appeal

Mr. Parish contends that substantial evidence does not support the ALJ's decision to deny benefits. He argues that: (1) the ALJ did not give proper consideration to Mr. Parish's subjective complaints; (2) the ALJ erred at Step Five; and (3) the ALJ improperly evaluated the treating physician opinion. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

Mr. Parish's main complaints were back, leg, and right knee pain. He had fusion surgery on his back in 2012 (Tr. at 33), before the relevant time period, and he argues that his condition has worsened to the point that he is disabled. MRI and

CT findings showed some moderate conditions, and Dr. Richard Peek, M.D., performed a second lumbar fusion surgery on September 20, 2017. (Tr. at 1035-1055). Dr. Peek told Mr. Parish that even after surgery, chronic back and leg pain was possible. (Tr. at 1056-1057, 1275). Mr. Parish did reasonably well after surgery with normal flexion and extension. (Tr. at 1075-1080). He had pain free active range of motion in his lumbar spine. *Id*. Dr. Peek urged Mr. Parish to continue his medications and return to his clinic in one month.[2]

In 2017 and 2018, Mr. Parish had epidural steroid injections in his back, along with branch blocks. (Tr. at 562-567, 1331-1342). He said they were somewhat effective; Mr. Parish also got some benefit from changing positions, using heating pads and taking pain medications. (Tr. at 430-432, 562, 1328-1329). Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). In May 2018, Mr. Parish's pain management doctor told him to resume normal activities, and Mr. Parish's physical therapists told him to do exercises at home. (Tr. at 385-387). A physician's recommendation to exercise suggests that a claimant has an increased

---

[2] Mr. Parish had a history of noncompliance with treatment: failing to take medication as prescribed, failing to follow up with pain management treatment, failing to follow multiple doctors' recommendations to quit his pack-a-day smoking habit, and not showing up for appointments. (Tr. at 562-567, 727, 975, 1032-1036, 1096).

5

functional capacity. *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009). The latest lumbar MRI, done in September 2018, showed normal alignment and vertebral height, with minimal disc bulge and mild hypertophy and no disc herniation or stenosis. (Tr. at 1402-1410). Objective tests showing mild to moderate conditions do not support a finding of disability. *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004).

Mr. Parish also had right knee problems, including meniscus tears and chondromalacia. (Tr. at 384-385, 559-560). He had multiple surgeries for that, and he stated that surgery didn't resolve his problems. (Tr. at 38-45). But a July 2017 x-ray showed normal alignment and joint spacing, with mild osteophytes. (Tr. at 995). A March 2018 clinical exam of the right knee showed normal range of motion with some tenderness. (Tr. at 1322-1330). Although Mr. Parish alleges that he has debilitating chronic pain, by the end of the relevant time-period, objective findings showed improved back and knee conditions.

Mr. Parish alleges that the ALJ failed to properly consider his subjective complaints. When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage,

effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). The ALJ is never free to ignore the subjective testimony of the claimant, even if it is uncorroborated by objective medical evidence. *Trudell v. Saul*, 2021 U.S. Dist. LEXIS 64492 *5 (E.D. Mo. April 2, 2021); *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. *Battles v. Sullivan*, 902 F.2d 657, 660 (8th Cir. 1990).

In this case, the ALJ discussed the objective findings, the nature of Mr. Parish's pain, Mr. Parish's response to treatment, his daily activities (although at the hearing Mr. Parish explained he could no longer perform as many activities as before), his non-compliance with treatment, and Mr. Parish's problems with drug-seeking or opiate dependency.[3] (Tr. at 14-17). The ALJ's analysis of subjective complaints was complete and based on appropriate factors.

Next, Mr. Parish asserts that the ALJ was unclear about the nature of the sit/stand option that he assigned in the RFC, and that it directly conflicted with the

---

[3] Mr. Parish consistently told his providers he was not using drugs, but he tested positive for methamphetamine, amphetamine, and marijuana. (Tr. at 16, 1328-1329).

7

requirements of the surveillance system monitor job that the VE identified.[4] First, Mr. Parish cites to no regulation or case law about the requirements of the surveillance system monitor job; he just makes lay assumptions about what is required. He then makes a confusing argument that a sit/stand option would mean he could not perform the sitting and standing requirements of the job. Perhaps, he means that the ALJ should have more specifically included the frequency of the sit/stand option in the RFC. However, this District has determined that an RFC without a specific sit/stand frequency passes muster; the words "sit/stand option" imply the claimant can alternate his position as needed throughout the workday. *See Robinson v. Astrue*, 2011 U.S. Dist. LEXIS 129584 *17 (E.D. Ark. November 8, 2011); *Buckner-Larkin v. Astrue*, 450 Fed. Appx. 626, 2011 U.S. App. LEXIS 19338, 2011 WL 4361652, *1 (9th Cir. Sept. 20, 2011) ("a 'sit/stand option' . . . is most reasonably interpreted as sitting or standing 'at will,' based on the record."); *Foster v. Astrue*, 2009 U.S. Dist. LEXIS 115381, 2009 WL 4757239, *2 (M.D. Fla. Dec. 10, 2009) (a commonsense reading of a hypothetical question and residual functional capacity assessment referring to "a sit/stand option" is that it contemplated an option to sit or stand at will); *Younger v. U.S. Com'r of Soc. Sec.*, 2009 U.S. Dist.

---

[4] The VE stated that he reconciled any difference between the DOT and the RFC restrictions with his job shadowing and experience (Tr. at 53). Mr. Parish does not assert specifically that this statement was insufficient, so that argument is deemed waived.

LEXIS 78811, 2009 WL 2827945, *12 (W.D. La. Sept. 1, 2009) ("it is assumed that the 'sit/stand' option given by the ALJ was implicitly 'as needed' or 'at will.'"); *Thompson v. Astrue*, 442 Fed. Appx. 804, 2011 U.S. App. LEXIS 16568, 2011 WL 3489671, *2 (4th Cir. Aug. 10, 2011) (the residual functional capacity finding and hypothetical "were consistent with an at-will, sit-stand option, and we find that no greater specificity was required here."). These cases contemplated Social Security Ruling 96-9p, 1996 SSR LEXIS 6 at *19, relative to the sit/stand option, and found that an RFC like the one assigned in this case suffices. Mr. Parish's argument that he cannot perform the job identified by the VE fails. The ALJ did not err at Step Five.

Finally, Mr. Parish claims that the ALJ did not properly evaluate the medical opinions. Dr. Peek filled out a short checkbox medical source statement on August 1, 2018. (Tr. at 1318). The limitations he placed on Mr. Parish based on back pain were very consistent with the assigned RFC, except the ALJ did not accept Mr. Peek's contention that Mr. Parish would need to elevate his legs, would have manipulative restrictions, and would miss over 5 days of work per month. (Tr. at 16). But an ALJ need only accept as true the portions of an opinion that are supported by the record. Where an opinion is only partially consistent with other evidence in the record, an ALJ may give significant weight to some aspects of the opinion while

discounting portions of the opinion that are not supported. *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000); *Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005)("physician opinions that are internally inconsistent . . . are entitled to less deference than they would receive in the absence of inconsistencies.") For example, Dr. Peek noted that Mr. Parish was progressing as expected after the back surgery he had performed, with pain-free range of motion, and that he may continue to have chronic pain even with treatment. (Tr. at 1035-1065, 1275). Dr. Peek noted that medications helped Mr. Parish to some degree, and that he had normal range of motion and normal strength. (Tr. at 1275-1276). Likewise, the large medical record did not contain evidence of very many appointments with Dr. Peek, which renders his opinion less persuasive. It was proper for the ALJ to discount portions of Dr. Peeks' statement. And he properly harmonized the other medical opinions in crafting the RFC.

## VI. <u>Conclusion</u>:

There is substantial evidence to support the Commissioner's decision that Mr. Parish was not disabled. The ALJ properly evaluated Mr. Parish's subjective complaints and the medical opinions, and he did not err at Step Five. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 21st day of June, 2021.

                                                                              _____
                                                              UNITED STATES MAGISTRATE JUDGE